UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINIS PASSARINHO and ANDREW E. SAXE, on behalf of themselves and others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> HANDYBOOK, INC., a/k/a HANDY TECHNOLOGIES, INC., OISIN HANRAHAN, UMANG DUA, and CAROLYN CHILDERS, <br><br> Defendants. | 15-cv-3984 (LGS) (GWG) <br><br><br> **AMENDED ANSWER TO COLLECTIVE AND CLASS ACTION COMPLAINT AND AMENDED COUNTERCLAIMS** |
| HANDYBOOK, INC., a/k/a HANDY TECHNOLOGIES, INC., <br><br> Counterclaimant, <br><br> v. <br><br> DINIS PASSARINHO and ANDREW E. SAXE, <br><br> Counterclaim-Defendants. | |

Defendants Handy Technologies, Inc. (improperly captioned as "Handybook, Inc. a/k/a Handy Technologies, Inc.") ("Handy"), Oisin Hanrahan, Umang Dua, and Carolyn Childers (collectively, "Defendants") by their attorneys, Littler Mendelson, P.C., for their Amended Answer to the Collective and Class Action Complaint ("Complaint"), filed on May 21, 2015, respond as follows:

1.      Defendants deny the allegations in response to Paragraph 1 of the Complaint, except admit that Plaintiffs purport to bring claims to recover overtime compensation and other wages, liquidated damages, and attorneys' fees and costs, but deny that Defendants engaged in any unlawful conduct which would give rise to any claim or otherwise would entitle Plaintiffs to

any relief whatsoever, and further deny that Plaintiffs are entitled to any of the remedies that they seek in this action.

2.      Defendants deny the allegations in response to Paragraph 2 of the Complaint, except admit that Plaintiffs purport to bring claims pursuant to the New York Labor Law.

3.      Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 3 of the Complaint.  To the extent a response is required, Defendants deny the allegations in Paragraph 3 of the Complaint.

4.      Defendants admit the allegations in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.      Defendants assert that the allegations in Paragraph 5 of the Complaint contain legal conclusions that do not call for a response.  To the extent a response is required, Defendants deny the allegations in Paragraph 5 of the Complaint.

6.      Defendants assert that the allegations in Paragraph 6 of the Complaint contain legal conclusions that do not call for a response.  To the extent a response is required, Defendants deny the allegations in Paragraph 6 of the Complaint.

## THE PARTIES

7.      Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 7 of the Complaint.

8.      Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 8 of the Complaint.

9.      Defendants deny the existence of "Handybook, Inc." and admit the remaining allegations in Paragraph 9 of the Complaint.

10.      Defendants deny the allegations in Paragraph 10 of the Complaint, except admit

that Mr. Hanrahan is Handy's Chief Executive Officer and Mr. Dua is Handy's Chief Operating Officer.

11.     Defendants admit the allegations in Paragraph 11 of the Complaint.

12.     Defendants admit the allegations in Paragraph 12 of the Complaint.

13.     Defendants admit the allegations in Paragraph 13 of the Complaint.

14.     Defendants admit the allegations in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations in Paragraph 15 of the Complaint.

16.     Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     Defendants deny the allegations in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants assert that the allegations in Paragraph 20 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants assert that the allegation in Paragraph 21 defining "Defendants" does not require a response.

22.     Defendants assert that the allegation in Paragraph 22 defining "Plaintiffs" does not require a response.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

23.     Defendants deny the allegations in Paragraph 23 of the Complaint, except admit that Plaintiffs purport to bring a collective action pursuant to the Fair Labor Standards Act ("FLSA") on behalf of operations support associates, individuals who were provided a "trial day," and other allegedly similarly situated employees on or after the date that is three years

before the filing of the Complaint, but deny that Defendants engaged in any unlawful conduct which would give rise to any claim or otherwise would entitle Plaintiffs to any relief whatsoever, and further deny that Plaintiffs or any other current or former Handy employees are similarly situated.

24.    Defendants deny the allegations in Paragraph 24 of the Complaint.

25.    Defendants deny the allegations in Paragraph 25 of the Complaint.

26.    Defendants deny the allegations in Paragraph 26 of the Complaint.

## RULE 23 CLASS ACTION ALLEGATIONS – NEW YORK

27.    Defendants deny the allegations in Paragraph 27 of the Complaint, except admit that Plaintiffs purport to bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of operations supports associates, individuals who were provided a "trial day," and other similarly situated employees on or after the date that is six years before the filing of the Complaint, but deny that Defendants engaged in any unlawful conduct which would give rise to any claim or otherwise would entitle Plaintiffs to any relief whatsoever, and further deny that Plaintiffs or any other current or former Handy employees are similarly situated.

28.    Defendants deny the allegations in Paragraph 28 of the Complaint, except state that the definition of "Class" does not require a response.

29.    Defendants deny the allegations in Paragraph 29 of the Complaint.

30.    Defendants deny the allegations in Paragraph 30 of the Complaint.

31.    Defendants deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 31 of the Complaint.  To the extent a response is required, Defendants deny the allegations in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint.

33.     Defendants deny the allegations in Paragraph 33 of the Complaint with respect to Defendants, and deny knowledge or information sufficient to form a belief concerning other employers throughout the state and their employees.

34.     Defendants deny the allegations in Paragraph 34 of the Complaint, including subparts (a) through (h).

## FACTS

35.     Defendants deny the allegations in Paragraph 35 of the Complaint, except admit that Handy is a privately held company that currently operates in at least twenty-six cities in North America and the United Kingdom.

36.     Defendants deny the allegations in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations in Paragraph 37 of the Complaint, except admit that Plaintiff Saxe applied to work for Handy in or around May 2013.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint, except admit that Plaintiff Passarinho applied to work for Handy in or around May 2013.

39.     Defendants deny the allegations in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations in Paragraph 40 of the Complaint, except admit that Plaintiff Saxe worked for Handy from June 3, 2013 to September 8, 2014.

41.     Defendants deny the allegations in Paragraph 41 of the Complaint, except admit that Plaintiff Passarinho worked for Handy from June 3, 2013 to March 20, 2015.

42.     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations in Paragraph 42 of the Complaint.

44.      Defendants deny the allegations in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations in Paragraph 45 of the Complaint, except admit that Mr. Saxe's starting salary was $35,000 and his salary upon termination was $40,000 per year.

46.     Defendants deny the allegations in Paragraph 46 of the Complaint, except admit that Mr. Passarinho's starting salary was $35,000 per year and his salary upon termination was $48,000 per year.

47.     Defendants assert that the allegations in Paragraph 47 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations in Paragraph 50 of the Complaint, except admit that Plaintiff Passarinho was offered and signed an agreement with Handy releasing claims in exchange for a monetary payment.

50.     Defendants deny the allegations in Paragraph 50 of the Complaint, except admit that Plaintiff Passarinho was offered and signed an agreement with Handy releasing claims in exchange for a monetary payment.

51.     Defendants state that the agreement referenced in Paragraph 51 of the Complaint speaks for itself and deny any allegations inconsistent with the agreement.

52.     Defendants admit the allegations in Paragraph 52 of the Complaint.

53.     Defendants deny the allegations in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations in Paragraph 54 of the Complaint.

55.     Defendants assert that the allegations in Paragraph 55 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required,

Defendants deny the allegations in Paragraph 55 of the Complaint.

56.     Defendants deny the allegations in Paragraph 56 of the Complaint, except admit that Handy offered Plaintiff Saxe a monetary payment in exchange for a release of claims which Saxe rejected.

57.     Defendants deny the allegations in Paragraph 57 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq*. Brought by Plaintiffs on**
**Behalf of Themselves, the FLSA Collective Plaintiffs and Class Members)**

58.     Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

59.     Defendants deny the allegations in Paragraph 59 of the Complaint.

60.     Defendants deny the allegations in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations in Paragraph 61 of the Complaint.

62.     Defendants deny the allegations in Paragraph 62 of the Complaint, except admit that Plaintiffs purport to seek damages for unpaid overtime compensation, liquidated damages, interest, and attorneys' fees and costs, but deny that Defendants engaged in any unlawful conduct which would give rise to any claim or otherwise would entitle Plaintiffs to any relief whatsoever, and further deny that Plaintiffs are entitled to any of the remedies that they seek in this action.

**SECOND CLAIM FOR RELIEF**
**(New York Overtime Violations, N.Y. Lab. L. § 650 *et seq*., N.Y. Comp. Codes R. & Regs.**
**§ 142 *et seq*., Brought by Plaintiffs, the FLSA Collective Plaintiffs and Class Members)**

63.     Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

64.     Defendants assert that the allegations in Paragraph 64 of the Complaint contain legal conclusions that do not call for a response.  To the extent a response is required,

Defendants deny the allegations in Paragraph 64 of the Complaint.

65.    Defendants assert that the allegations in Paragraph 65 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 65 of the Complaint.

66.    Defendants assert that the allegations in Paragraph 66 of the Complaint contain legal conclusions that do not call for a response.

67.    Defendants deny the allegations in Paragraph 67 of the Complaint.

68.    Defendants assert that the allegations in Paragraph 68 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 68 of the Complaint.

69.    Defendants assert that the allegations in Paragraph 69 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 69 of the Complaint.

**THIRD CLAIM FOR RELIEF**
**(New York Violations, NYLL §§ 195, 198 *et seq*., Brought by**
**Plaintiffs, the FLSA Collective Plaintiffs and Class Members)**

70.    Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

71.    Defendants assert that the allegations in Paragraph 71 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 71 of the Complaint.

72.    Defendants assert that the allegations in Paragraph 72 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 72 of the Complaint.

## FOURTH CLAIM FOR RELIEF
### (FLSA Claims, 29 U.S.C. § 201, *et seq*., Brought by Plaintiffs on Behalf of Themselves, the FLSA Collective Plaintiffs and Class Members)

73.     Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

74.     Defendants deny the allegations in Paragraph 74 of the Complaint.

75.     Defendants deny the allegations in Paragraph 75 of the Complaint.

76.     Defendants deny the allegations in Paragraph 76 of the Complaint.

77.     Defendants deny the allegations in Paragraph 77 of the Complaint.

78.     Defendants deny the allegations in Paragraph 78 of the Complaint, except admit that Plaintiffs purport to seek damages for unpaid compensation, liquidated damages, interest, and attorneys' fees and costs, but deny that Defendants engaged in any unlawful conduct which would give rise to any claim or otherwise would entitle Plaintiffs to any relief whatsoever, and further deny that Plaintiffs are entitled to any of the remedies that they seek in this action.

## FIFTH CLAIM FOR RELIEF
### (New York State Minimum Wage Act, New York Labor Law § 650 *et seq*. Brought by Plaintiffs on Behalf of Themselves, the FLSA Collective Plaintiffs and Class Members)

79.     Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

80.     Defendants deny the allegations in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations in Paragraph 82 of the Complaint.

83.     Defendants deny the allegations in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations in Paragraph 84 of the Complaint.

85.     Defendants deny the allegations in Paragraph 85 of the Complaint.

86.     Defendants assert that the allegations in Paragraph 86 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 86 of the Complaint.

87.     Defendants assert that the allegations in Paragraph 87 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 87 of the Complaint.

## SIXTH CLAIM FOR RELIEF
### (New York Violations, NYLL §162 *et seq*., Brought by Plaintiffs, the FLSA Collective Plaintiffs and Class Members)

88.     Defendants reallege and incorporate their responses to all previous allegations contained in the Complaint.

89.     Defendants deny the allegations in Paragraph 89 of the Complaint.

90.     Defendants assert that the allegations in Paragraph 90 of the Complaint contain legal conclusions that do not call for a response.   To the extent a response is required, Defendants deny the allegations in Paragraph 90 of the Complaint.

## PRAYER FOR RELIEF

91.     Defendants deny that Plaintiffs or those individuals whom they seek to represent in this action, (*i.e.*, members of the proposed FLSA Collective and Rule 23 Class described in the Complaint) are entitled to any relief whatsoever, including the relief sought in the Prayer for Relief, including subparagraphs (A) through (J).

## DEMAND FOR JURY TRIAL

92.     Defendants deny that Plaintiffs are entitled to a jury trial on any claims.

*        *        *

## DEFENSES

Defendants assert the following defenses and/or affirmative defenses, without assuming any burden of proof that otherwise does not exist as a matter of law.  These defenses may also apply to the claims of some or all of the collective and/or class of allegedly similarly situated persons, if collective and/or class certification is granted.

1.      The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.      The Complaint, in whole or in part, fails to state a claim upon which prejudgment interest may be granted.

3.      The claims of Plaintiffs and/or the putative class are barred, in whole or in part, by the doctrine of accord and satisfaction, waiver, laches, estoppel, comparative fault, contributory fault, and/or the applicable statute of limitations.

4.      The claims of Plaintiffs and/or the putative class are barred, in whole or in part, to the extent they released their claims.

5.      The claims of Plaintiffs and/or the putative class are barred because they were employed in the capacity of administrative and/or executive employees and therefore exempt from any overtime-pay requirements under the FLSA or NYLL.

6.      Plaintiffs and/or the putative class are not entitled to any equitable relief because they have an adequate remedy at law.

7.      Plaintiffs cannot establish or satisfy the requirements for a collective action pursuant to Section 216(b) of the FLSA and, therefore, the collective action allegations of the Complaint should be stricken and dismissed.

8.      Plaintiffs cannot satisfy the requirements for a class action under Federal Rule of Civil Procedure 23 because, among other things, (1) Plaintiffs are unable to meet the requirements of numerosity, typicality, and commonality, (2) individual questions of law or fact predominate over any common questions, and (3) a class action is not superior to other available methods for fairly and efficiently adjudicating the claims of putative class members.

9.      The Complaint's class allegations should be dismissed because independent and individual analyses of Plaintiffs and the putative class members' claims and Defendants' defenses to such claims are required.

10.     Certification of a class, as applied to the facts and circumstances of this case, would constitute a denial of Defendants' procedural rights and right to a trial by jury and to substantive and procedural due process, in violation of the Fourteenth Amendment of the United States Constitution.

11.     Class relief is not appropriate because one or more individuals who wish to serve as a class representative has interests that may conflict with the interests of the putative class.

12.     Plaintiffs and the putative class members' claims are barred to the extent that Plaintiffs lack standing to bring them. In particular, Plaintiffs Saxe and Passarinho, as former employees, lack standing to represent the putative class of current employees of Defendant because they cannot seek injunctive relief.  For these reasons and others, Plaintiffs are inadequate class representatives as well.

13.     Defendants' actions were not willful.  No act or omission of Defendants which is alleged to violate the law was willful, knowing, or in reckless disregard for the provisions of the FLSA and/or NYLL.

14.    Plaintiffs' and/or the putative class members' claims are barred, in whole or in part, because Defendants at all times acted in good faith to comply with the FLSA and/or NYLL, and had reasonable grounds for believing they were in compliance with the FLSA and/or NYLL.  Defendants assert a lack of willfulness or intent to violate the FLSA and/or NYLL as a defense to any claim for liquidated damages.

15.    Any actions that Defendants took in connection with Plaintiffs and/or the putative class members' compensation were done in good faith, in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the United States Department of Labor and/or New York Department of Labor.

16.    Plaintiffs and/or the putative class members' claims are barred to the extent Plaintiffs and/or the putative class failed, refused, and/or neglected to mitigate or avoid the damages complained of in the Complaint, if any.

17.    If Plaintiffs and/or any putative class members succeed in establishing any violation under the FLSA and/or NYLL, and to the extent any sums are found due and owing, Defendants are entitled to a set-off against said sum to the extent paid, tendered, waived, compromised, and/or released prior to the adjudication herein, including but not limited to those amounts paid, tendered, waived, compromised, and/or released through any other proceeding, either formal or informal, or to the extent any additional compensation was paid to Plaintiffs and/or any putative class members over and above their wages and/or beyond the time period compensable under the FLSA and/or NYLL.

18.    Plaintiffs and/or the putative class members' claims are barred or should be reduced, in whole or in part, by exclusions, exceptions, credits, recoupments, or offsets permissible under the FLSA and/or NYLL.

19.    Plaintiffs and/or the putative class members' claims are barred, in whole or in part, to the extent they are seeking compensation for hours during which they were engaged in activities that were preliminary or postliminary to principal activities.

20.    Plaintiffs and/or the putative class members' claims are barred, in whole or in part, because, to the extent any violations are established, they constitute *de minimis* violations.

21.    At all times, Defendants made complete and timely payments of all wages due to Plaintiffs and/or putative class members under the FLSA and/or the NYLL.

22.    At all times, Defendants reasonably believed in good faith that they provided Plaintiffs and/or putative class members with adequate notice of wage information pursuant to New York Labor Law § 195(1).

23.    Certain Plaintiffs and/or putative class members are precluded from litigating the claims asserted in the Complaint in this Court, and certain Plaintiffs are precluded from litigating on behalf of a collective and/or class or bringing any collective and/or class claims whatsoever, to the extent that they are party to an arbitration agreement, which requires that they resolve all claims in connection with their employment by mandatory final and binding arbitration on an individual basis only.

24.    Certain Plaintiffs and/or putative class members are not entitled to a jury trial to the extent they specifically waived such right in the arbitration agreement.

25.    To the extent discovery reveals that Plaintiffs and/or the putative class members falsely reported their hours, and there is no evidence Defendants knew or should have known

that they were providing false information regarding their hours, Defendants hereby invoke the doctrine of estoppel to bar the claims asserted by Plaintiffs and/or the putative class members.

26.     The Court should not exercise supplemental jurisdiction over the counts in the Complaint that purport to arise under the NYLL.

27.     Plaintiffs and putative class members have received complete and timely payment of all wages due to them under the FLSA and NYLL for all hours worked while employed.

28.     To the extent Plaintiffs seek penalties under NYLL, their NYLL claims may not proceed as a class action by operation of New York Civil Practice Law and Rules § 901(b).

29.     Plaintiffs and putative class members have been provided the requisite wage notice under the FLSA and the NYLL during their employment with Handy.

30.     Plaintiffs cannot offer a model of damages that is amenable to class or collective treatment.

31.     Even if Defendants have, in fact, failed to pay Plaintiffs and/or any putative class members for any of the activities alleged in Plaintiffs' Complaint (which they have not), such activities do not constitute compensable work under the FLSA or NYLL, and, furthermore, such activities were not an integral and indispensable part of Plaintiffs' principal activities of employment and are not compensable.

32.     Plaintiffs and/or the putative class members' claims against Individual Defendants Hanrahan, Dua, and Childers ("Individual Defendants") are barred to the extent the Individual Defendants did not exercise control over the terms of and conditions of Plaintiffs and the putative class members' employment.

33.     Plaintiffs and/or the putative class members' claims against the Individual Defendants are barred due to the fact that the Individual Defendants do not qualify as "employers" pursuant to the FLSA or NYLL.

34.     In addition to the foregoing defense, Defendants reserve the right to amend their Answer to raise any and all other additional affirmative and other defenses that may become evident during discovery and during any other proceeding in this action or pursue any available counterclaims against Plaintiffs or any putative collective and/or class member who joins this action as those claims become known during this litigation.

**WHEREFORE,** Defendants request that the Complaint be dismissed with prejudice and in its entirety; that judgment be entered against Plaintiffs and in favor of Defendants for all costs and attorneys' fees incurred by them in defending this action; and that Defendants be granted such other and further relief as the Court may deem just and proper.

*       *       *

## AMENDED COUNTERCLAIMS

Handy, by its attorneys, Littler Mendelson, P.C., for its amended counterclaims against Plaintiffs Dinis Passarinho and Andrew E. Saxe ("Counterclaim Defendants"), in the above-captioned action alleges as follows:

## INTRODUCTION

Handy brings these amended counterclaims to recover damages for Counterclaim Defendants' various unlawful breaches.  These violations include: (i) stealing and disseminating Handy's confidential information and material in breach of Counterclaim Defendants' Employee Non-Competition,   Non-Solicitation,   Confidentiality   and   Assignment   Agreements ("Nondisclosure Agreements"), (ii) soliciting Handy employees and contractors in violation of

the Nondisclosure Agreements, (iii) designing products intended to unlawfully compete with Handy's products and services while employed by Handy, and (iv) disseminating defamatory, malicious, misleading, and harassing communications and photographs designed to impugn Handy's reputation.

<strong><u>JURISDICTION</u></strong>

1.      This Court has jurisdiction of these counterclaims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367 and Fed. R. Civ. P. 13.

<strong><u>RELEVANT FACTUAL BACKGROUND</u></strong>

**A.      Saxe and Passarinho Sign Nondisclosure Agreements**

2.      As a condition of their continued employment with Handy, the Counterclaim Defendants, who are both former employees, each executed a Nondisclosure Agreement.

3.      Saxe signed his Nondisclosure Agreement on February 25, 2014.

4.      Passarinho signed his Nondisclosure Agreement on February 26, 2014.

5.      By executing the Nondisclosure Agreements, each of the Counterclaim Defendants agreed that he would not use Proprietary Information for purposes other than the performance of his duties, or disclose any Proprietary Information to anyone outside of the Company without the Company's prior written permission.

6.      The Nondisclosure Agreements define Proprietary Information as "all information, whether or not in writing, concerning the Company's business, technology, business relationships or financial affairs which the Company has not released to the general public."

7.      Pursuant to the Nondisclosure Agreements, Proprietary Information includes: "(a) *corporate information*, including plans, strategies, methods, policies, resolutions, negotiations or litigation; (b) *marketing information*, including strategies, methods, customer identities or other information about prospects, or market analyses or projections; (c) *financial information*,

including cost and performance data, debt arrangements, equity structure, investors and holdings, purchasing and sales data and price lists; and (d) *operational and technological information*, including plans, specifications, manuals, forms, templates, software, designs, methods, procedures, formulas, discoveries, inventions, improvements, concepts and ideas; and (e) *personnel information*, including personnel lists, reporting or organizational structure, resumes, personnel data, compensation structure, performance evaluations and termination arrangements or documents.  Proprietary Information also includes information received in confidence by the Company from its customers or suppliers or other third parties." (Emphasis in original.)

8.     By executing the Nondisclosure Agreements, each of the Counterclaim Defendants further affirmed his commitment to the Company, affirming that "I will devote my full-time efforts to the Company's business and I will not engage in any other business activity that conflicts with my duties to the Company."

9.     By executing the Nondisclosure Agreements, each of the above Counterclaim Defendants further agreed that for one year following the termination of his employment, he would not "directly or indirectly, in any manner, other than for the benefit of the Company … solicit, entice, attempt to persuade any other employee or consultant of the Company to leave the Company for any reason or otherwise participate in or facilitate the hire, directly or through another entity, of any person who is employed or engaged by the Company or who was employed or engaged by the Company within one (1) year of any attempt to hire such person."

**B.     Saxe and Passarinho Solicit Handy Employees and Compete with Handy in Breach of Their Nondisclosure Agreements**

10.     On September 8, 2014, Saxe resigned from Handy.

11.     Shortly after his resignation, Saxe accepted a started working for a cleaning company that competes with Handy, named Managed by Q.

12.     Over the course of several months, Saxe successfully solicited Passarinho to leave Handy and join him at Managed by Q in violation of his Nondisclosure Agreement.

13.     Handy expended significant resources attempting to fill the role that Passarinho left as a result of Saxe's unlawful solicitation.

14.     Handy's expenditures and losses included, but were not limited to, approximately $20,000 on a recruiter to find a suitable employee to replace Passarinho, at least $20,000 in lost productivity from Handy employees who stepped in to complete the work that Passarinho had been doing while Handy searched for a replacement, and at least $2,500 in lost productivity from Handy employees who had to interview replacement candidates.   These expenses cut into Handy's profits.

15.     Saxe encouraged other Handy employees to leave Handy and join Managed by Q as well.

16.     Indeed, on March 12, 2015, Passarinho informed another Handy employee that Saxe "is on a mission to get every handy [sic] employee to [Managed by] Q."

17.     By way of example only, Saxe attempted to recruit one Handy employee to be Managed by Q's Director of Supplies.

18.     On March 12, 2015, Passarinho informed the target employee via text message that Saxe "spoke highly of you after he asked me what you did and do … I think [General Manager] Laura [Castaing] will reach out for an interview."

19.     On March 20, 2015, due to Saxe's solicitation, Passarinho resigned from Handy to join Managed by Q.

20.     Once employed by Managed by Q, Passarinho continued his efforts, along with Saxe, in soliciting Handy employees in violation of his Nondisclosure Agreement.

21.     By way of example only, Passarinho assisted Saxe in soliciting a Handy employee for the position of Director of Supplies.

22.     On April 8, 2015, Passarinho sent the target employee a text message stating, "Hey – know you're staying @ Handy for now.  As a heads up, our VP of Ops wants to speak with you about the director of supply role.  Just a heads up that he will be reaching out."

23.     In further violation of the Nondisclosure Agreement, Passarinho used confidential Handy databases and information to engage in a side business to create a tool that could assist Handy's competitor(s) generate leads for professional cleaners with whom they could contract.

24.     During the last two weeks of Passarinho's employment with Handy, from March 7, 2015 through March 20, 2015, Passarinho only reported to work on three occasions.

25.     Passarinho spent the time away from Handy, while he was still on Handy's payroll, developing this cleaner lead generation model he intended to use to compete with Handy.

26.     Indeed, on March 16, 2015, four days prior to Passarinho's resignation from Handy, Passarinho responded to an instant message on Gmail from a Handy employee asking if he was working from home that day by stating "Yeah … Working on my sketchy cleaner lead gen model."

27.     As a result of Passarinho competing with Handy during the last two weeks of his employment, Handy paid Passarinho $1,538 in salary to which he was not entitled.

**C.    Saxe and Passarinho's Steal and Disclose Handy's Proprietary Information in Breach of Their Nondisclosure Agreements**

28.     While employed by Handy, Saxe maintained the confidential contact information of hundreds of Handy's cleaning professionals on his personal phone.

29.     After Saxe resigned from Handy and joined Managed by Q, he retained the cleaning professionals' confidential contact information.

30.     Saxe proceeded to contact numerous cleaning professionals that contracted with Handy in an effort to recruit them to Managed by Q's platform.

31.     Upon information and belief, as a result of Saxe's solicitation, at least 10 cleaning professionals severed their contracts with Handy and engaged with Managed by Q.

32.     By making its online cleaning platform available to cleaning professionals, Handy receives an average of $27 per week in profits from booking fees for each professional. Accordingly, as a result of Saxe and Passarinho's actions, Handy has lost at least $14,000 in profits from booking fees to date.

33.     Further, on ten separate occasions after resigning from Handy, beginning on March 30, 2015, Passarinho accessed Handy's confidential Salesforce.com database, which stores the company's proprietary information regarding Handy's customers, contractors, sales, and services.

34.     Upon information and belief, Passarinho used this information in furtherance of his cleaner lead generation tool and/or disclosed it to individuals at Managed by Q in violation of his Nondisclosure Agreement.

35.     Additionally, on July 24, 2015, Slate.com published an article authored by Alison Griswold entitled "Dirty Work: Almost everything that startups get right – and horribly wrong – happened at home-cleaning service Handy."

36.     The article disclosed proprietary information concerning, *inter alia*, the company's performance metrics, internal policies, compensation structure, onboarding and off-

boarding practices, and corporate strategies, to which only a limited number of employees had access.

37.     Ms. Griswold obtained Handy's proprietary information from disgruntled "[f]ormer Handy employees" who "requested anonymity because they … had signed nondisclosure agreements."

38.     Upon information and belief, Ms. Griswold's sources for the company's proprietary information included both Saxe and Passarinho, whose disclosures violated their Nondisclosure Agreements.

39.     As a result of the Slate.com article, Handy had to expend approximately $27,500 on a public relations firm and approximately $16,275 on legal fees to manage the damage the article caused to the company's reputation.

40.     On July 7, 2015, the law firm of Lichten & Liss-Riordan, P.C. ("Lichten") filed a lawsuit against Handy entitled *Maisha Emmanuel v. Handy Technologies, Inc.*, No. 15-cv-12914 (D. Mass.) ("*Emmanuel*"), alleging violations of the Fair Labor Standards Act and Massachusetts law.

41.     On August 10, 2015, Lichten filed a motion to certify a class in *Emmanuel*.  The motion attached as an exhibit a confidential PowerPoint presentation that the Company presented to cleaning professionals during their orientation regarding the platform.

42.     Paper copies of the presentation were not provided to cleaning professionals, and the PowerPoint was only available to a limited number of higher level employees, including Saxe and Passarinho.

43.     Upon information and belief, Saxe and Passarinho disclosed the confidential PowerPoint to Lichten in violation of their Nondisclosure Agreements.

**D.      Passarinho Defames Handy on Glassdoor.com**

44.     On March 25, 2015, Passarinho publicly posted a review of Handy on Glassdoor.com – a site that publishes employee reviews of current and former employers – in which he falsely alleged that Handy mistreated and underpaid its employees, in order to impugn the company's reputation and reduce its customer base.

45.     In the review, which was entitled "Worst Job Experience," Passarinho stated with respect to Handy: "Terrible hours, awful management, grossly underpay their employees, promotions are based off who you know/are friends with not on performance or merit. Cult-like mentality, every 3 months shifts are rotated based off metrics, yet they encourage you to focus on quality not quality [sic] -- double edged sword. CX is treated terribly by the rest of the company."

46.     On April 1, 2015, Passarinho posted a second review of Handy on Glassdoor.com in which he again sought to impugn the company's reputation by falsely alleging that Handy mistreated and did not properly compensate its employees.

47.     In the posting, entitled "STAY FAR AWAY FROM THIS FRATERNITY!" Passarinho stated, *inter alia*: "Recently, money is mysteriously missing from direct deposits. Management doesn't help anyone in general so there's just finger-pointing and shrugging with [sic] you bring this or any other issue to their attention.  It's a catastrophe, really.  They should be embarrassed."

48.     Handy did not authorize either posting.

49.     Upon information and belief, Passarinho made each posting with full knowledge of its falsity and the detrimental effect it would have on Handy's business.

50.    Although Passarinho published the reviews anonymously, on April 3, 2015, he disclosed to a Handy employee that he had written the reviews.

51.    As a result of the negative press Saxe and Passarinho caused Handy by way of the Slate.com article and Glassdoor.com review, at least 17 candidates for engineering positions have declined Handy's offers of employment to date, resulting in significant additional recruiting costs and lost productivity by existing employees who have had to spend work time interviewing and recruiting additional candidates to fill these vacancies.

**E.    Passarinho Further Maligns Handy by Distributing Inappropriate Photographs to Current and Former Handy Employees**

52.    On or about June 19, 2015, Passarinho sent text messages containing explicit, inappropriate photographs to current Handy employees.

53.    The photographs depicted Passarinho wearing Handy attire bearing the Company's logo while he observed other individuals engaging in various explicit sex acts with two sex workers in a hotel room.

54.    Upon information and belief, Passarinho distributed these photographs in an effort to harass current Handy employees and damage Handy's reputation and good will.

55.    By reason of the foregoing, Handy has been damaged in an amount to be determined at trial.

56.    The conduct of the Counterclaim Defendants as set forth above was willful, deliberate and taken in knowing violation of the rights of Handy and the Counterclaim Defendants' obligations to Handy.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Breach of Contract)**

57.    Handy incorporates paragraphs 1 through 56 hereof as if set forth in full herein.

58.     Handy entered into a valid and enforceable Nondisclosure Agreement with each of the Counterclaim Defendants for which each of them received consideration and which each of them signed as a condition of his continued employment with Handy.

59.     Each of the Counterclaim Defendants has breached his Nondisclosure Agreement.

60.     Handy has performed each and every obligation required of it under the Nondisclosure Agreements for each of the Counterclaim Defendants.

61.     The provisions contained in the Nondisclosure Agreements are reasonable and narrowly-tailored restrictions on competition, solicitation, and prohibitions on using or disclosing Handy's confidential and proprietary information so as to protect Handy's legitimate business interests.

62.     As stated above, Handy has suffered actual damages as a result of the breaches of the Nondisclosure Agreements by the Counterclaim Defendants and is entitled to recover such damages and interest in an amount as the proof at trial may warrant.

63.     The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

64.     Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' breaches of the Nondisclosure Agreements until such time as they are ordered to cease their improper solicitation of Handy's employees and contractors and use of Handy's proprietary information, documents and materials.

65.     Injunctive relief is necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' breaches of the Nondisclosure Agreement,

and Handy is also entitled to attorneys' fees and expenses pursuant to section 11 of the Nondisclosure Agreements.

### SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duties and Duty of Loyalty)**

66.     Handy repeats and realleges the allegations of Paragraphs 1 through 65 hereof as if set forth herein in full.

67.     The Counterclaim Defendants were employed by Handy in positions of trust and confidence.

68.     Both during and after their employment with Handy, the Counterclaim Defendants owed certain fiduciary duties to Handy including, but not limited to, a duty of loyalty and honesty, by virtue of which they were and are prohibited from acting in a disloyal manner in in any way inconsistent with that trust relationship.

69.     The Counterclaim Defendants were obligated to treat Handy's confidential information as the property of Handy and not to disclose such information to third parties or to use such information on account of other third parties, including Managed by Q and Slate.com, and were also obligated not to harm Handy's business and/or benefit Handy's competitor by violating the Nondisclosure Agreement.

70.     Notwithstanding these obligations and duties, and in violation thereof, the Counterclaim Defendants have engaged and continue in disloyal acts as aforesaid.

71.     As a consequence of the Counterclaim Defendants' foregoing intentional breaches of their fiduciary duties to Handy, and their duties of loyalty to Handy, as stated above, Handy has suffered injury and is entitled to damages and interest in an amount as the proof at trial may warrant.

72.     The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

73.     Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' breaches of their fiduciary duties and duty of loyalty until such time as they are ordered to cease their improper solicitation of Handy's employees and use of Handy's proprietary information, documents and materials.

74.     Injunctive relief is also necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' breaches of their fiduciary duties and duty of loyalty.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

75.     Handy repeats and realleges the allegations of Paragraphs 1 through 74 hereof as if set forth herein in full.

76.     As a result of the aforesaid wrongful actions of defendants, the Counterclaim Defendants have been and will continue to be unjustly enriched at Handy's expense.

77.     Handy is entitled to an accounting from the Counterclaim Defendants and to an award of damages equal to all monies unjustly received by them as a result of their wrongful conduct, and to damages and interest in an amount that the accounting will determine.

### FOURTH CLAIM FOR RELIEF
### (Unfair Competition)

78.     Handy repeats and realleges the allegations of Paragraphs 1 through 77 hereof as if set forth herein in full.

79.     The Counterclaim Defendants have engaged in unfair competition and violated industry standards by, among other things, unlawfully disclosing and/or using Handy's confidential information, and unlawfully soliciting Handy employees and contractors, and, as stated above, Handy is entitled to damages and interest in an amount as the proof at trial may warrant.

80.     The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

81.     Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' unfair competition until such time as they are ordered to cease their improper solicitation of Handy's employees and use of Handy's proprietary information, documents and materials.

82.     Injunctive relief is necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' unfair competition, and Handy is also entitled to attorneys' fees and expenses pursuant to section 11 of the Nondisclosure Agreements.

### FIFTH CLAIM FOR RELIEF
#### (Misappropriation)

83.     Handy repeats and realleges the allegations of Paragraphs 1 through 82 hereof as if set forth herein in full.

84.     The Counterclaim Defendants intentionally and wrongfully misappropriated Handy's property, including, *inter alia*, its confidential business information.

85.     As a result of the intentional and wrongful conduct of the Counterclaim Defendants, Handy has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may at warrant.

86.     The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

87.     Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' misappropriation until such time as they are ordered to cease their improper use of Handy's proprietary information, documents and materials.

88.     Injunctive relief is also necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' misappropriation of proprietary information.

## SIXTH CLAIM FOR RELIEF
**(Interference with Contractual Relations and Prospective Economic Advantage)**

89.     Handy repeats and realleges the allegations of Paragraphs 1 through 88 hereof as if set forth herein in full.

90.     By the aforesaid actions, the Counterclaim Defendants have intentionally, maliciously and without justification interfered in and induced the breach of Handy's current and prospective contractual and/or business relationships with cleaning professionals under contract and/or prospective contract with Handy.

91.     As a result of the aforesaid wrongful actions of the Counterclaim Defendants, and as stated above, Handy has been injured, for which it is entitled to recover damages and interest in an amount which the proof at trial may show.

92.     The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

93.     Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' interference with contractual relations and prospective economic advantage until such time as they are ordered to cease their improper solicitation of Handy's employees and use of Handy's proprietary information, documents and materials.

94.     Injunctive relief is also necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' interference with Handy's contractual relations and prospective economic advantage.

### SEVENTH CLAIM FOR RELIEF
### (Conversion)

95.     Handy repeats and realleges the allegations of Paragraphs 1 through 94 hereof as if set forth herein in full.

96.     Handy has the absolute and unconditional right to its documents containing Handy's proprietary information and the immediate possession of such property.

97.     The Counterclaim Defendants have retained at least some of Handy's property for their own use and with the intent to permanently deprive Handy of that property.

98.     The Counterclaim Defendants, without Handy's authorization, wrongfully assumed control, dominion, and/or ownership over Handy's property.

99.     Handy has suffered injury as a result of the Counterclaim Defendants' acts of conversion for which it is entitled to recover damages and interest in an amount which the proof at trial may show.

100.    The said actions of the Counterclaim Defendants were undertaken in knowing or reckless disregard of their obligations to Handy, and with knowing or reckless disregard of the harm that their actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

101.    Handy has suffered and will continue to suffer irreparable harm as a direct result of the Counterclaim Defendants' conversion of Handy's property until such time as they are ordered to cease their improper use of Handy's proprietary information, documents and materials.

102.    Injunctive relief is also necessary as the recovery of damages alone will not fully compensate Handy for the Counterclaim Defendants' conversion of Handy's property.

## EIGHTH CLAIM FOR RELIEF
### (Trade Libel Against Counterclaim Defendant Passarinho)

103.    Handy repeats and realleges the allegations of Paragraphs 1 through 102 hereof as if set forth herein in full.

104.    By falsely denigrating Handy's products and services on Glassdoor.com, Passarinho has committed trade libel against Handy.

105.    The publications on Glassdoor.com were done with malice, without authorization or privilege, and with the knowledge that such publications would likely damage Handy and its business, bring it into ill repute, destroy Handy's customers' confidence in Handy's ability to provide services and impair Handy's ability to attract qualified applicants.

106.    Based on the foregoing, Handy has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may warrant.

107.    The said actions of Passarinho were undertaken in knowing or reckless disregard of his obligations to Handy, and with knowing or reckless disregard of the harm that his actions

would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**(Defamation Against Counterclaim Defendant Passarinho)**

108.   Handy repeats and realleges the allegations of Paragraphs 1 through 107 hereof as if set forth herein in full.

109.   By publicizing false and defamatory statements about Handy and its business operations on Glassdoor.com, Passarinho has defamed Handy.

110.   The publication on Glassdoor.com was done with malice, without authorization or privilege, and with the knowledge that such publications would likely damage Handy and its business, bring it into ill repute, destroy Handy's customers' confidence in Handy's ability to provide services, and impair Handy's ability to attract qualified applicants.

111.   Based on the foregoing, Handy has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may warrant.

112.   The said actions of the Passarinho were undertaken in knowing or reckless disregard of his obligations to Handy, and with knowing or reckless disregard of the harm that his actions would cause Handy, thereby entitling Handy to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Handy requests judgment for injunctive relief, damages, interest, punitive damages, costs of suit, attorneys' fees, expenses, and such other and further relief as the Court may deem just and proper.

Respectfully,

Dated: New York, New York
          November 9, 2015

/s/ A. Michael Weber
_____
A. Michael Weber
Andrew M. Spurchise
Christine L. Hogan
Adam W.G. Freed

LITTLER MENDELSON, P.C.
900 Third Avenue, 8th Floor
New York, New York 10022
212.583.9600

*Attorneys for Defendants/Counterclaimant*